# H. P. WELDEN and OSCAR M. DAMM, Appellants, v. W. B. MYERS and CHARLES HINZ, Respondents.

Springfield Court of Appeals, June 26, 1923.

1. **FORCIBLE ENTRY AND DETAINER: Facts Held not to Show That Lessor was Out of Possession When Sued.** In unlawful detainer by lessee against lessor, his son, and second lessee for seizing plaintiff's exclusive mining rights under a written lease, lessor claiming nonpayment of rent in accordance with the lease, arresting plaintiff's employees, and leasing the rights to another defendant with lessor's son as foreman who took actual possession under lessor's consent, the facts did not authorize a requested instruction amounting to a demurrer on the ground that defendant was not in possession when sued, in view of the exception to the rule that unlawful detainer is maintainable only against one having possession when sued, where defendants act in concert pursuant to a general design to withhold premises from the one entitled thereto.

2. **MINES AND MINERALS: Lease Construed as to Payment of Royalties to Avoid Cancellation.** A lease for mining ochre, clay, etc., recited that it was in consideration of $50. receipt of which was acknowledged, and other valuable consideration. Following that was a clause whereby lessees agreed to pay one dollar per ton for materials removed, and to pay royalties on the first day of each month for all material mined and removed, etc., and to mine and remove fifty tons each month, or pay lessor $50 advanced royalties. Following this was a cancellation clause based on failure to make the payments before described. *Held*, that the $50 first recited as receipted for was an advancement on royalty not due until the end of the month, and hence lessees were not delinquent, and the lease was not subject to cancellation where no material was mined, and, including the initial payment receipted for as advanced royalty, all royalties were paid as agreed at the end of each month.

3. **FORCIBLE ENTRY AND DETAINER: Instruction for Damages Following Statute, Held Correct.** In an unlawful detainer suit, an instruction following the language of the statute, Revised Statutes 1919, section 3007, that damages shall include waste and injury as well as rents and profits due both in such sum as the jury believes from the evidence, etc., is correct.

4. **APPEAL AND ERROR:** Party Securing New Trial on Insufficient Reasons, Must Prove Other Sufficient Grounds, Where a new trial is granted for insufficient reasons, the moving party must show that it is supported on other grounds.

Appeal from the Circuit Court of Scott County.—*Hon. Frank Kelly*, Judge.

REVERSED AND REMANDED (*with directions.*)

*Ray B. Lucas* and *W. C. Russell* for appellants.

(1) Appellants were rightfully in possession of the premises described in the petition, and the respondents "wrongfully and without force, by disseizin," obtained and continued in possession of the premises after demand made in writing, for the delivery of the possession thereof to the appellants, who had the legal right to such possession. Respondents, therefore, were guilty of unlawful detainer. R. S. 1919, sec. 2995; Redman v. Perkins, 122 Mo. App., 168, and cases therein cited. (2) When appellants offered the lease in evidence, showed they were in possession and proved that Myers obtained possession by resorting to the criminal law and put Hinz into possession, and that they refused to quit possession after a demand was made in writing, they made a prima-facie case, and, therefore, it was not error for the court to overrule defendants' demurrer offered at the close of plaintiffs' case. R. S. 1919, sec. 2995; Koger v. Ward, 243 S. W. 413. (3) The court committed no error in refusing defendants' instructions Nos. A and B, because they were based upon an erroneous theory of the case and an erroneous construction of the written contract. Koger v. Ward, 243 S. W. 415. (4) The verdict in this case was manifestly for the right parties, and there being no error which would warrant a reversing of the case, the court went beyond and abused its discretion in granting the defendants a new trial, and its action in so doing should be reversed, and the

judgment permitted to stand in accordance with the verdict of the jury. Moloney v. Bank, 232 S. W. 133; Brigman v. Zollmann, 220 S. W. 911; Sec. 1513, R. S. 1919.

*Wm. Oliver, Ward & Reeves* and *Gallivan & Finch* for respondents.

(1)   Unlawful detainer can only be maintained by the party having the legal right to possession when the demand is made and against the person in actual possession, and since all the evidence shows that Myers had leased the property to Hinz long before the demand, and that Hinz was in the actual and exclusive possession, the action cannot be sustained against Myers. Sec. 2995, R. S. 1919; Orrick v. St. Louis Public School, 32 Mo. 315; De Graw v. Prior, 53 Mo. 313; Armstrong v. Hendrick, 67 Mo. 542; Sloan v. Smith, 76 Mo. App. 510; Jennings v. Robertson, 82 Mo. App. 544; St. Louis Brewing Co. v. Niederluecke, 102 Mo. App. 303; Slover v. Kramer (Mo. App.), 232 S. W. 1110; Forder v. Handlan, 155 Mo. App. 453; Alt v. Hobbs, 62 Mo. App. 671; Kean v. Kolkschneider, 21 Mo. App. 538. (2)   Sec. 1158, R. S. 1919, has no application because the statutes providing for the practice and proceeding in lawful detainer constitute a special and preclusive code, and such a proceeding is not to be determined by the ordinary rules and proceedings in civil cases. Gary Realty Co. v. Kelly (Mo. Sup.), 214 S. W. 92, l. c. 97, and cases cited; Buschling v. Ackley, 270 Mo. 157. (3)   Where the party ousted from possession has no lawful right to continue in possession, as where his time has expired or lease forfeited, a recovery must be limited to nominal damages. Wamsganz v. Wolff, 86 Mo. App. 205; Levy v. McClintock, 141 Mo. App. 600; Masseller v. Deaver (N. C.), 8 L. R. A. 537. (4)   Where the Legislature has provided a preclusive code on any subject the general code has no application. As to election cases: State ex rel. v. Spencer, 166 Mo. 285; State ex rel. Hough, 193 Mo.

615; State ex rel. v. Slover, 134 Mo. 10. As to Drainage Law: Buschling v. Ackley, 270 Mo. 157; Pemiscot County v. McCarty (Mo. Sup.), 208 S. W. 450; Pemiscot County v. McCarty (Mo. Sup.), 208 S. W. 452. As to unlawful detainer: Gary Realty Co. v. Kelley (Mo. Sup.), 214 S. W. 92, l. c. 97; Buschling v. Ackley, 270 Mo. 157.

BRADLEY, J.—This cause in unlawful detainer was removed to the circuit court by *certiorari* pursuant to section 3031 et seq., Revised Statutes 1919. In the circuit court the cause was tried before the court and a jury. Defendants were found guilty as charged, and damages were fixed at $1250, and the monthly rents and profits at $155. Plaintiff had judgment for restitution, and the damages and value of the monthly rents and profits were doubled in accordance with section 3012, Revised Statutes 1919. Motion for new trial was filed, and a new trial granted, and plaintiffs appealed.

On November 3, 1919, defendant Myers by written contract leased to plaintiffs for a term of three years forty acres of land in Scott county with a three-year renewal provision under certain conditions. By the terms of the lease defendants acquired the exclusion right to mine, operate and remove all ochre, clay, sand or clay substances in, on, or under said land. Plaintiffs entered upon the land and began mining operations, and had removed a small amount of material before any trouble arose. Myers conceived the idea that plaintiff had breached the contract, and he thereupon attempted to cancel, obtain possession, and put defendant Hinz in possession.

At the close of plaintiffs' case defendant Myers requested and was refused a peremptory instruction in the nature of a demurrer. Myers stood on his demurrer. No evidence was offered on behalf of defendants. We will first dispose of the question raised by the demurrer. The demurrer is bottomed on the contention that Myers was not in possession at the time the suit was filed.

Myers contended that the $50 monthly payment as advanced royalties was due and payable under the terms of the contract on the first of each month. Plaintiffs had paid under the contract the sum of $800 including the first $50 payment. The March, 1921, payment was not made on the first of the month. Myers who was called as a witness for plaintiffs testified that the February payment was late, and that he notified plaintiffs that he would expect the next check not later than March 3rd. The March payment did not arrive on March 3rd, and defendant Myers says that he cancelled the lease. On the third of March, Myers and defendant Hinz had a talk about a lease to Hinz. "When did you make the trade with Mr. Hinz? A. On the next day after I cancelled Mr. Welden's contract on the 4th of March; we framed it up and started it, but it didn't go into effect until the 4th." On the 3rd of March according to the docket entry of the justice of the peace before whom the affidavit was filed, Myers, in the absence of plaintiffs, had their men arrested for trespassing. Myers says this was done later, and not until he had cancelled. "I had these men arrested after I made the trade with Mr. Hinz and told Mr. Hinz and my son that they could go to work." Myers further says: "I am the W. B. Myers who swore out the warrant for Mr. Seitman and Mr. Berry, and had them arrested. I didn't go with the constable when he arrested these men, but I considered that they were working on my premises. They were working on the land that I leased to Mr. Welden, and after I had arrested these men the case was dismissed. My boy was foreman for Mr. Hinz, and I told my boy that the suit was dismissed and no one was in possession, and they could go to work if they wanted to. I had a talk with Mr. Hinz about this before this time and he wrote a letter and told my boy to go work in the mine which I had leased to him. My son, Bryan Myers, with my consent and permission, took possession of the mine and went to work after these other men were arrested and got off the premises."

Hinz was to pay Myers $100 per month, while plaintiffs were paying only $50, but Myers says that he did not know that Hinz would pay $100 per month until after he had cancelled, though he says he ascertained it on the same evening.    Myers testified that Hinz told him that if he, Myers, would get possession of the property he, Hinz, would pay him $100 per month, but that he didn't think that Hinz told him this until after he had cancelled.    Plaintiff Welden lived in Elco, Illinois, and plaintiff Damm in St. Louis, and they did not know of Myers' proceedings until some days afterwards.    As soon as plaintiffs learned about their men being arrested plaintiff Welden went immediately to Scott county and prepared to defend his men.  He went to the mine and found the tool house broken open, the tools out, and the mine in operation with defendant Myers' son in charge as foreman.    Welden further testified that he had spent over $2000 in getting the mines in readiness for operation.    Hinz lived in Chicago, and so far as appears here was not at or near these mines except when he made the deal with his codefendant Myers.

On this state of facts we think that Myers' demurrer was properly overruled.    The general rule is that unlawful detainer or forcible entry and detainer can be maintained only by the party having the legal right to possession and against the party in possession.    In Slover v. Kramer, 232 S. W. 1110, we had before us this question.    In that case in an opinion by Judge Cox we ruled that: "If the owner of land is guilty of forcible entry, and remains in possession by himself or agent until suit is brought, he is a proper party defendant, and judgment should go against him, as well as his agent, who is in the actual possession; but although he is guilty of forcible entry, yet if he parts with possession before suit is brought, either by leasing and placing the tenant in possession under the lease, or by conveying by deed and placing the purchaser in possession under the deed, his is not liable in this form of action, the

reason being that this is a possessory action alone, and only those in possession in person or by agent at the time of filing the suit are proper parties defendant.''

Several cases are cited in the Slover Case as sustaining the general rule, and there are many others. But there are some exceptions to the general rule that forcible entry and detainer or unlawful detainer will lie only against the party technically *in possession*. One who participates in forcibly seizing premises, and thereafter maintains and assists another in detaining the premises; and those who act in concert pursuant to a general design to withhold premises from one entitled to possession may be joined in unlawful detainer. [Blumenthal v. Waugh, 33 Mo. 181; Tuttle v. Davis, 48 Mo. App. 9; Kingman v. Abington et al., 56 Mo. 46; St. Louis Brewing Ass'n v. Niederlucke et al., 102 Mo. App. 303, 76 S. W. 645.] In Hammond v. Illiad Amusement Co. et al., — Mo. App. —, 234 S. W. 371, the trial court gave the following declaration which was approved: ''The subject-matter of this action is the unlawful detention of the possession of the property from the owner lawfully entitled to such possession. After the time fixed in the notice to quit, each tenant holding over and each person or party knowingly and willfully participating in the wrongful detention of said property and enjoying the use and fruits thereof was engaged in a wrongful act and is liable under the statute in a proceeding of this kind.'' The court in approving this declaration said that the trial court in so declaring the law was following a long line of decisions in this State, and cited some of the cases we have cited, supra, with others.

We think that this record would justify the placing of defendant Myers under either of the exceptions mentioned. We have quoted and referred to sufficient of the record to support our conclusion, and it is not necessary to further discuss this question. We are making no new exception. We are merely applying those already made. The exceptions have their limits as pointed out in the

Brewing Association Case, supra, and they should not be invoked except in a clear case. Plaintiffs cite section 1158, Revised Statutes 1919, as supporting their contention that Myers was properly made a party defendant, but it is not necessary to take up this feature.

Should the new trial have been granted? The new trial was granted on the ground as appears in the record: "Because the court erroneously submitted to the jury the measure of damages, and the court failed to take into consideration the forfeiture or nonforfeiture of the lease."

The lease contract so far as material here is as follows: "That in consideration of $50, the receipt of which is hereby acknowledged, and other valuable considerations hereinafter named, to be performed by the said parties of the second part, the said party of the first part hereby grants, leases, etc., . . ."

"The parties of the second part hereby agree to pay the party of the first part $1 per ton for all of the above-described materials for the mining and removing from the above-described property. Said parties agree to pay to the party of the first part all royalties on the first day of each month for all materials mined and removed upon receipt of correct weights. The parties of the second part hereby agree to mine and remove fifty tons of the above described material each month or pay to the party of the first part $50 advanced royalties from the date of this contract. . . ."

"It is agreed to by both parties if at any time throughout the life of this contract the parties of the second part for any reason fail to make the above-described payment the party of the first part shall have the right to cancel the contract and therefore be released from all rights and obligations given under the contract."

As defendants construe the contract the $50 payment mentioned in the first paragraph cannot be considered as an advancement on royalty. We do not agree

Welden & Damm v. Myers & Hinz.

with this construction. The real consideration is set out in the second paragraph. Plaintiffs were to pay $1 per ton, and agreed to mine and remove 50 tons per month. It was known that 50 tons per month could not be mined until the mining machinery, etc., was installed, hence the alternative provision to pay $50 per month as an advance on royalties. The contract was made on November 3, 1919, and $50 paid then, and thereafter plaintiffs paid $50 each and every month, sometimes early in the month and sometimes late. There is some significance in the fact that the amount mentioned in paragraph one is $50. That is the amount to be paid each month as advance royalty. "Other valuable considerations hereinafter named" has reference not alone to the $50 per month provision in the second paragraph, but refers also to the $1 per ton provision, etc. If plaintiffs had mined 100 tons per month they would pay $100 per month. The contract insured the lessor at least $50 per month, but not more. Under our construction that the first payment should be considered as advance royalty, plaintiff were not delinquent, unless the contract required the payment of this advance to be made on the first day of the month. There is nothing in the contract to support such construction. Defendant Myers does not so construe the contract. His Construction is that the first $50 payment was no part of an advance on royalty, and that the advance on royalty was not due till the end of the month for which it accrued. In the brief filed for defendants it is stated that plaintiffs contend that a total of $800 was paid by them; that this is correct, "but $50 was part consideration for the lease, and cannot be applied on royalty payments. The royalty payments amount to $750, and since no material was mined there was due appellant the advance royalty payment of $50 at the end of each month." The lease was not subject to cancellation under the facts, and Myers' attempt to cancel was a nullity. There was no ground, therefore, to grant a new trial on the theory that probably the lease had been properly cancelled.

As to damages the court instructed: "The Court instructs the jury that if you find the issues for the com-

plainants you will assess their damages, if any, for waste and injury to the premises from the date of the written demand, to-wit; June 16, 1921, to March 20, 1922, in the aggregate in such sum as you may believe and find from the evidence is due plaintiffs, not exceeding $2500 and also find the value of the monthly rents and profits of said premises in such sum as you may believe and find from the evidence that they are worth per month, not exceeding $200."

This instruction followed substantially the statute, section 3007, Revised Statutes 1919, and is in our opinion correct. [See, also, Finley v. Magill, 57 Mo. App. 481.] We have seen that a new trial should not have been granted upon either ground assigned by the trial court. If the reasons assigned for granting the new trial are not sufficient then the burden is on the party in whose favor the new trial is granted to show that the order granting the new trial can be and is supported on other grounds. [Grain Co. v. Railroad, 177 Mo. App. 194, 164 S. W. 1821.] There is no attempt to justify the order granting the new trial on any other ground except on the demurrer to the evidence filed by defendant Myers, and we have already disposed of that question.

Our conclusion is that the cause should be reversed and remanded with directions to set aside the order granting the new trial, reinstate the verdict, and enter judgment thereon, and in accordance therewith as in the first instance; and it is so ordered. *Cox, P. J.*, and *Farrington, J.*, concur.